Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 1 of 62 PageID #: 210

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

MOHAMED MONASAR, GABRIELLE WALLS, GABRIEL ABREU, JESUS HERNANDEZ TORRES, LUIS MARTINEZ, BRANDON ROMAN, and OSAMA ALI, *all on behalf of themselves and others similarly situated,*

                    Plaintiffs,

          v.

THE CITY OF NEW YORK, TARGET CORPORATION THE NEW YORK TIMES COMPANY, BURLINGTON COAT FACTORY WAREHOUSE CORP., Bj's WHOLESALE CLUB INC., SAM ASH MUSIC CORPORATION,  THE TJX COMPANIES, LLC D/B/A MARSHALLS, 180 MAIDEN LANE, LLC , SHOP-RITE SUPERMARKETS, INC., and BARCLAYS BANK PLC AKA BARCLAYS BANK DELAWARE and BNOS BAIS YAAKOV OF FAR ROCKAWAY

                    Defendants.

Index Number:  150717/2025


FIRST AMENDED VERIFIED CLASS AND COLLECTIVE ACTION COMPLAINT

---

Plaintiffs MOHAMED MONASAR, GABRIELLE WALLS, GABRIEL ABREU, JESUS HERNANDEZ TORRES, LUIS MARTINEZ, and OSAMA ALI, on behalf of themselves and others similarly situated, by and though their attorneys the Law Office of John A. Scola, PLLC, Goddard Law, PLLC and Charny & Wheeler P.C., hereby allege as follows against Defendants City of New York and the New York City Police Department (referred to as the "NYPD"), Target Corporation ("Target") and The New York Times Company ("NYT") CITY OF NEW YORK, TARGET CORPORATION THE NEW YORK TIMES COMPANY, BURLINGTON COAT FACTORY WAREHOUSE CORP., Bj's WHOLESALE CLUB INC., SAM ASH MUSIC CORPORATION,  THE TJX COMPANIES, LLC D/B/A MARSHALLS, 180 MAIDEN LANE,

1

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 2 of 62 PageID #: 211

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

LLC, SHOP-RITE SUPERMARKETS, INC, BARCLAYS BANK PLC AKA BARCLAYS BANK DELAWARE and BNOS BAIS YAAKOV OF FAR ROCKAWAY (collectively with NYPD, "Defendants").

## NATURE OF THE CLAIMS

1.      For all relevant time to this Complaint, the NYPD has operated its "Paid Detail Program," whereby the NYPD staffs Police Officers, Detectives, Sergeants, and Lieutenants at private businesses throughout New York City, including those owned and operated by Defendants Target Corporation, The New York Times Company, Burlington Coat Factory Warehouse Corp., Bj's Wholesale Club Inc., Sam Ash Music Corporation, The TJX Companies, LLC dba Marshalls, 180 Maiden Lane, LLC, Shop-Rite Supermarkets, Inc., Barclays Banks PLC aka Barclays Banks Delaware and Bnos Bais Yaakov of Far Rockaway.  (collectively the "Vendor Defendants"), to perform off-duty uniformed security work for hourly pay.

2.      The compensation and terms and conditions of employment of the NYPD Officers assigned to work at the Vendor Defendants are jointly controlled by the Defendants.

3.      For all relevant time to this Complaint, Defendants have engaged in a pattern and practice of failing to compensate Plaintiffs and other similarly situated Officers for the work they perform at Vendor Defendants through the Paid Detail Program, and when paid at all, such payment is received long after the Plaintiffs' scheduled pay days.

3.       Plaintiffs bring this action against the Defendants for Wage Theft under both the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL"), and in the alternative the Freelance Isn't Free Act, N.Y.C. Admin. Code §§ 20-927, *et seq.* ("FIFA").

2

Case 1:25-cv-00750-MKB-JAM Document 12-4 Filed 03/06/25 Page 3 of 62 PageID #: 212

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

4. The FLSA claims are brought as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of the Plaintiffs and all other similarly situated NYPD Officers (defined herein) employed by the Vendor Defendants who participated in the Paid Detail Program at any time during the full statute of limitations period.

5. The NYLL claims and the FIFA claims are brought as a class action pursuant to Article 9 of the CPLR on behalf of the Plaintiffs and all other similarly situated Officers, employed by the Vendor Defendants who participated in the Paid Detail Program at any time during the full statute of limitations period.

6. The Defendants have additionally violated New York's Wage Theft Prevention Act by completely disregarding the obligation to provide the Plaintiffs and those similarly situated with the required Notices of Pay Rate and accurate Wage Statements.

## JURISDICTION and VENUE

7. Jurisdiction is conferred upon this Court by New York Labor Law Section 198.

8. Venue is proper in this Court pursuant to CPLR 503(a) in that a substantial part of the events occurred in New York County.

## PARTIES

### Plaintiff Mohamed Monasar

3. Plaintiff Monasar is a resident of the State of New York and has been employed by the Defendants from 1996 until the present.

4. Plaintiff Monasar was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

### Plaintiff Gabrielle Walls

3

Case 1:25-cv-00750-MKB-JAM   Document 12-4   Filed 03/06/25   Page 4 of 62 PageID #: 213

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

5.      Plaintiff Walls is a resident of the State of New York and has been employed by the Defendants NYPD and Target from 2000 until the present.

6.      At all relevant times, Plaintiff Walls was an "employee" of Defendants NYPD and Target within the meaning of all relevant statutes and regulations.

### Plaintiff Gabriel Abreu

7.      Plaintiff Abreu is a resident of the State of New York and has been employed by the Defendants for all relevant time periods.

8.      Plaintiff Abreu was an employee of Defendants within the meaning of all relevant statutes and regulations.

### Plaintiff Brandon Roman

9.      Plaintiff Roman is a resident of the State of New York and has been a participant in the PDP since June, 2022.

10.      Plaintiff Abreu was an employee of Defendants as described below within the meaning of all relevant statutes and regulations.

### Plaintiff Jesus Hernandez Torres

11.      Plaintiff Jesus Hernandez Torres is a resident of the State of New York and has been participant in the PDP for all relevant time periods of this Complaint.

12.      Plaintiff Torres was an employee of Defendants as described below within the meaning of all relevant statutes and regulations.

### Plaintiff Luis Hernandez

13.      Plaintiff Jesus Hernandez Torres is a resident of the State of New York and has been participant in the PDP for all relevant time periods of this Complaint.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 5 of 62 PageID #: 214

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

14.     Plaintiff Torres was an employee of Defendants as described below within the meaning of all relevant statutes and regulations.

**Plaintiff Osama Ali**

15.     Plaintiff Osama Ali is a resident of the State of New York and has been participant for all relevant time periods of this Complaint.

16.     Plaintiff Ali was an employee of Defendants as described below within the meaning of all relevant statutes and regulations.

**Defendant City of New York**

17.     The City of New York is a municipal corporation that controls and oversees, *inter alia*, the operations of the NYPD throughout its five boroughs.

18.     At all relevant times, the City of New York controlled and directed the terms of employment and compensation of Plaintiffs, and all persons similarly situated.

19.     At all relevant times, the City of New York established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

20.     At all relevant times, the City of New York maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

21.     At all relevant times, the City of New York was an "employer" within the meaning of all relevant statutes and regulations.

**Defendant New York City Police Department**

Case 1:25-cv-00750-MKB-JAM     Document 12-4     Filed 03/06/25     Page 6 of 62 PageID #: 215

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

22.     The NYPD is a public administrative agency that controls and oversees the police throughout the City of New York's five boroughs.

23.     The NYPD maintains its principal office at One Police Plaza, New York, NY 10038.

24.     At all relevant times, the NYPD controlled and directed the terms of employment and compensation of Plaintiffs and all persons similarly situated.

25.     At all relevant times, the NYPD established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, *inter alia*, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

26.     At all relevant times, the NYPD maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

27.     At all relevant times, the NYPD was an "employer" within the meaning of all relevant statutes and regulations.

### Defendant Target Corporation

28.     Upon information and belief Defendant Target is a foreign corporation with its principal place of business located at 1000 Nicollet Mall TPN 12, Minneapolis, MN 55403, authorized to do business in the State of New York.

29.     Target participates in the NYPD's Paid Detail Program.

30.     At all relevant times, Target controlled and directed the terms of employment and compensation of Plaintiffs, and all persons similarly situated.

31.     At all relevant times, Target established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated,

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 7 of 62 PageID #: 216

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

32.    At all relevant times, Target maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

33.    At all relevant times, Target was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

### Defendant The New York Times Corporation

34.    Upon information and belief Defendant NYT is a domestic business corporation with its principal place of business located at 620 Eight Avenue, New York, NY, 10018.

35.    NYT participates in the NYPD's Paid Detail Program.

36.    At all relevant times, NYT controlled and directed the terms of employment and compensation of Plaintiff Monasar, and all persons similarly situated.

37.    At all relevant times, NYT established, implemented, disseminated, and controlled the employment policies applicable to Plaintiff Monasar and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiff Monasar and all persons similarly situated.

38.    At all relevant times, NYT maintained and exercised authority to hire, fire, discipline, and promote Plaintiff Monasar and all persons similarly situated.

39.    At all relevant times, NYT was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

### Defendant Burlington Coat Factory Warehouse Corp.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 8 of 62 PageID #: 217

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

40.     Upon information and belief Defendant Burlington Coat Factory Warehouse Corp. ("Burlington") is a New Jersey business corporation authorized to perform business in New York, with its principal place of business located at 1830 Route 130, Burlington, New Jersey, 08016.

41.     Burlington participates in the NYPD's Paid Detail Program.

42.     At all relevant times, Burlington controlled and directed the terms of employment and compensation of the Plaintiffs that performed PDP assignments at Burlington, and all persons similarly situated.

43.     At all relevant times, Burlington established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

44.     At all relevant times, Burlington maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

45.     At all relevant times, Burlington was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

### Defendant BJ's WHOLESALE CLUB INC.

3.     Upon information and belief Defendant Bj's Wholesale Club Inc. ("Bj's") is a Massachusetts business corporation authorized to perform business in New York, with its principal place of business located at 350 Campus Drive, Marlborough, MA.

4.     Bj's participates in the NYPD's Paid Detail Program.

5.     At all relevant times, Bj's controlled and directed the terms of employment and compensation of the Plaintiffs that performed PDP assignments at Burlington, and all persons similarly situated.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 9 of 62 PageID #: 218

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

6.     At all relevant times, Bj's established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

7.     At all relevant times, Bj's maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

8.     At all relevant times, Bj's was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**Defendant Sam Ash Music Corporation**

9.     Defendant Sam Ash Music Corporation ("Sam Ash") is a domestic business corporation with its principal executive offices at 278 Duffy Avenue, Hicksville, New York, 11801.

10.     Sam Ash participates in the NYPD's Paid Detail Program.

11.     At all relevant times, Sam Ash controlled and directed the terms of employment and compensation of the Plaintiffs that performed PDP assignments at Sam Ash, and all persons similarly situated.

12.     At all relevant times, Sam Ash established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

13.     At all relevant times, Sam Ash maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

14.     At all relevant times, Sam Ash was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

### Defendant The TJX Companies, LLC dba Marshalls]

15.     Defendant The TJX COMPANIES, LLC ("Marshalls") is a foreign business corporation with its principal executive offices at 770 Corchituate Road, Framingham, MA.

16.     Marshalls participates in the NYPD's Paid Detail Program.

17.     At all relevant times, Marshalls controlled and directed the terms of employment and compensation of the Plaintiffs that performed PDP assignments at Marshalls, and all persons similarly situated.

18.     At all relevant times, Marshalls established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

19.     At all relevant times, Marshalls maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

20.     At all relevant times, Marshalls was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

### Defendant 180 MAIDEN LANE, LLC

21.     Defendant 180 Maiden Lane, LLC ("180 Maiden Lane") is a domestic business corporation with its principal executive offices at 80 State Street, Albany, NY 12207

22.     180 Maiden Lane participates in the NYPD's Paid Detail Program.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

23. At all relevant times, 180 Maiden Lane controlled and directed the terms of employment and compensation of the Plaintiffs that performed PDP assignments at 180 Maiden Lane, and all persons similarly situated.

24. At all relevant times, 180 Maiden Lane established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

25. At all relevant times, 180 Maiden Lane maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

26. At all relevant times, 180 Maiden Lane was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

**Defendant Shop-Rite Supermarkets, Inc**

27. Defendant Shop-Rite Supermarkets, Inc. ("Shoprite") is a foreign business corporation with its principal executive offices at 5000 Riverside Drive, Keasbey, NJ 08832.

28. Shoprite participates in the NYPD's Paid Detail Program.

29. At all relevant times, Shoprite controlled and directed the terms of employment and compensation of the Plaintiffs that performed PDP assignments at Shoprite, and all persons similarly situated.

30. At all relevant times, Shoprite established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

11

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 12 of 62 PageID #: 221

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

31.     At all relevant times, Shoprite maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

32.     At all relevant times, Shoprite was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

### Defendant BARCLAYS BANK PLC AKA BARCLAYS BANK DELAWARE

33.     Defendant BARCLAYS BANK PLC AKA BARCLAYS BANK DELAWARE ("Barclays") is a foreign business corporation with its principal executive offices at 100 West St, Wilmington, DE 19801.

34.     Barclays participates in the NYPD's Paid Detail Program.

35.     At all relevant times, Barclays controlled and directed the terms of employment and compensation of the Plaintiffs that performed PDP assignments at Barclays, and all persons similarly situated.

36.     At all relevant times, Barclays established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

37.     At all relevant times, Barclays maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

38.     At all relevant times, Barclays was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

### Defendant Bnos Bais Yaakov of Far Rockaway

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 13 of 62 PageID #: 222

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

39.     Defendant Bnos Bais Yaakov of Far Rockaway ("Bnos Bais Yaakov") is a corporation formed under the New York Religious Law ("RCL") with its principal executive offices at 609 Beach 9th Street, Far Rockaway, New York 11691

40.     Bnos Bais Yaakov participates in the NYPD's Paid Detail Program.

41.     At all relevant times, Bnos Bais Yaakov controlled and directed the terms of employment and compensation of the Plaintiffs that performed PDP assignments at Bnos Bais Yaakov, and all persons similarly situated.

42.     At all relevant times, Bnos Bais Yaakov established, implemented, disseminated, and controlled the employment policies applicable to Plaintiffs and all persons similarly situated, including, inter alia, policies concerning timekeeping, work allocation, task supervision, monitoring work product, payroll applicable to Plaintiffs and all persons similarly situated.

43.     At all relevant times, Bnos Bais Yaakov maintained and exercised authority to hire, fire, discipline, and promote Plaintiffs and all persons similarly situated.

At all relevant times, Bnos Bais Yaakov was an "employer" and/or "hiring party" within the meaning of all relevant statutes and regulations.

## FACTS

A. **Background**

44.     In or around the Spring of 1998, the NYPD created the Paid Detail Program ("PDP") to allows employees of the NYPD to perform off-duty uniformed security work within New York City.

45.     The primary purpose of the PDP is to provide a highly visible police presence at participating businesses.

46.     NYPD personnel who hold any of the following titles may participate in the PDP:

13

Case 1:25-cv-00750-MKB-JAM   Document 12-4   Filed 03/06/25   Page 14 of 62 PageID #: 223

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

(i) Police Officer; (ii) Detective; (iii) Sergeant; (iv) Lieutenant or (v) Captains (collectively, "Officers").

47.     The PDP is the only authorized program for businesses to employ uniformed off-duty Officers.

48.     The PDP allows, with limited exceptions, any event planner, corporation, or interested organization approved by the NYPD to employ Officers part-time to provide uniformed security work.

49.     Officers are assigned to work at various businesses through the PDP, including, *inter alia*: (i) retail chains; (ii) department stores; (iii) supermarkets; (iv) houses of worship; (v) sports complexes; (vi) banks; and (vii) office buildings.

50.     The NYPD and the various Vendors work in concert to control all aspects of Officers' employment through the PDP.

**B.  NYPD's Administration of the PDP and Employment of Officers**

    **i.  Approval and Denial of Businesses**

51.     The NYPD must approve a business before it is permitted to employ Officers through the PDP.

52.     The NYPD sets the parameters for business participation in the PDP.

53.     The NYPD allows, with limited exceptions, any event planner, corporation, or interested organization to qualify for the PDP, subject to the NYPD's approval.

54.     The NYPD excludes, inter alia, government and quasi-governmental entities and personal protection or bodyguard companies from participating in the PDP.

55.     To qualify, businesses are required to provide various information requested by the NYPD.

56.     The NYPD also performs a general background and credit check of each business.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

57.     After the NYPD reviews a business's responses, background information, and credit information, it requires the business to sign a "Participation Agreement" and submit a certificate of insurance.

58.     Finally, the Commissioner of the NYPD reviews the signed Participation Agreement and certificate of insurance before granting or denying final approval for the business to participate in the PDP.

### ii.  Approval or Denial of NYPD Employees to Qualify as Officers

59.     The NYPD also sets the parameters for Officers to participate in the PDP.

60.     To qualify, an Officer must meet various criteria, including, inter alia, possessing greater than one year of service in the NYPD and maintaining full duty status throughout the duration of the Officer's participation in the PDP.

61.     The NYPD excludes employees who are considered chronically sick, on performance monitoring, or in possession of "position limitations."

62.     Further, the NYPD limits participation in the PDP to personnel holding specific titles and ranks.

63.     NYPD employees must obtain approval from their commanders and submit a written application, as well as tax documentation, to be considered for participation in the PDP.

64.     Further, the NYPD's Paid Detail Unit reviews each applicant's work record before approving him or her to participate in the PDP.

65.     The NYPD maintains authority to unilaterally remove an Officer from the PDP if he or she is promoted or transferred to a position that disqualifies him or her, or is placed on performance monitoring.

### iii.  Direction and Control of PDP Details

15

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 16 of 62 PageID #: 225

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

66.     The NYPD maintains direction, control, and supervision of the assignment of Officers to PDP details.

67.     Further, the NYPD maintains and operates an online portal through which participating businesses may schedule Officers to perform off-duty uniformed security work.

68.     The NYPD controls when businesses may schedule Officers for details and requires that details last from four to 12 hours.

69.     The NYPD evaluates each requested detail and, based on its assessment of safety and security concerns, determines the minimum number of Officers necessary for assignment, as well as the number of Officers required to supervise.

70.     The NYPD also controls and determines when Officers may accept details and the number of hours per month Officers may work the same.

71.     The NYPD limits Officers with more junior ranks, such as Police Officer or Detective, to a maximum of 80 hours of PDP work per month.

72.     The NYPD limits Officers with the more senior ranks, such Sergeant or Lieutenant, to a maximum of 30 hours of PDP work per month.

73.     The NYPD prohibits Officers from working PDP assignments within three hours of the start of their regularly scheduled non-PDP tours.

74.     Similarly, the NYPD prohibits Officers from working PDP assignments within one hour of the end of their regularly scheduled non-PDP tours.

75.     The NYPD requires Officers to complete Paid Detail Cards for each PDP detail they work.

76.     The NYPD prohibits Officers from trading PDP details with one another.

16

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

77.     Per its policies, the NYPD suspends Officers who request PDP details on behalf of other Officers or perform PDP details originally assigned to another Officer without the NYPD's prior authorization.

78.     The NYPD also requires that Officers provide documentation to their NYPD supervisors in the event they have to cancel a previously scheduled PDP detail.

79.     Officers who fail to provide such documentation risk being deemed ineligible for future PDP assignments.

80.     The NYPD prohibits Officers from working for participating businesses, including the Vendors, outside of the PDP.

81.     Officers who schedule details directly with a participating business are disciplined and deemed ineligible for future PDP assignments.

### iv. Control Over Officers' Uniforms and Physical Appearance on PDP Details

82.     The NYPD maintains control and direction over the uniforms and physical appearance of Officers on PDP details.

83.     The NYPD establishes and enforces a dress code for all Officers on PDP details.

84.     The NYPD mandates that Officers wear NYPD-approved clothing on PDP details, including full uniforms, vests, and eight-point caps.

85.     The NYPD prohibits Officers from wearing, inter alia, baseball caps, raid jackets, and other non-uniform apparel.

86.     The NYPD requires Officers to conform to the same grooming and appearance standards applicable to Officers on regularly scheduled non-PDP tours.

87.     The NYPD directs Officers to bring NYPD-issued radios, batons, and activity logs on PDP assignments.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 18 of 62 PageID #: 227

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

88.    The NYPD subjects Officers to inspection by NYPD supervisors to ensure compliance with PDP uniform and physical appearance requirements.

**v.  <u>Control Over Officers' Work During PDP Details</u>**

89.    The NYPD maintains direction, control, and supervision of the work performed by Officers during PDP details.

90.     Upon arrival at a participating business, the NYPD commands Officers to report to the business's representative or to the ranking Officer supervising the detail.

91.    Additionally, the NYPD directs Officers to sign in on a Paid Detail Attendance Sheet when they arrive.

92.    The NYPD cautions Officers that they are subject at all times to NYPD rules and regulations while working on PDP details.

93.    The NYPD assigns high-ranking officials, such as Sergeants, Lieutenants, and Captains, to perform daily rounds of PDP details to monitor Officers' work.

94.    The NYPD mandates that Officers report to the NYPD any arrests or Officer injuries that occur on PDP details.

95.    At the conclusion of a PDP detail, the NYPD directs Officers to sign out on a Paid Detail Attendance Sheet and present a Paid Detail Card to the participating business's representative or the ranking Officer for signature.

96.    The NYPD instructs participating businesses to report any Officer who breaches NYPD standards.

97.    The NYPD also instructs participating businesses to report any Officer who breaches the business's own internal policies.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 19 of 62 PageID #: 228

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

98.    The NYPD disciplines Officers who breach NYPD standards or a business's policies on a PDP detail by, inter alia: (i) removing the given Officer from the detail; (ii) banning the Officer from future details with a specific business; (iii) suspending an Officer's PDP eligibility; or (iv) expelling an Officer from participation in the PDP completely.

### vi. **Control Over Officers' Wages**

99.    The NYPD directs and controls the manner in which Officers are paid through the PDP.

100.    The NYPD establishes uniform hourly rates based on each Officer's rank.

101.    The NYPD has set an hourly rate of $41.00 for Officers with the rank of Police Officer or Detective.

102.    The NYPD also charges participating businesses an administrative fee of $4.10 for each hour of PDP work performed by a Police Officer or Detective.

103.    The NYPD has set an hourly rate of $51.00 for Officers with the rank of Sergeant.

104.    The NYPD also charges participating businesses an administrative fee of $5.10 for each hour of PDP work performed by a Sergeant.

105.    The NYPD has set an hourly rate of $57.00 for Officers with the rank of Lieutenant.

106.    The NYPD also charges participating businesses an administrative fee of $5.70 for each hour of PDP work performed by a Lieutenant.

107.    The NYPD has set an hourly rate of $87.00 for Officers with the rank of Captains.

108.    The NYPD also charges participating businesses an administrative fee of $8.70 for each hour of PDP work performed by a Captain.

109.    The NYPD directs and controls the employment status of Officers, mandating that Officers are classified (incorrectly) as independent contractors for PDP details.

19

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 20 of 62 PageID #: 229

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

110. The NYPD requires payment to Officers on an IRS Form 1099, as opposed to an IRS Form W-2.

111. The NYPD directs Officers to list 1 Police Plaza, New York, New York 10038 (rather than the Officers' home addresses) when completing tax forms for PDP details.

112. The NYPD administers payment to Officers through the NYPD's Paid Detail Unit.

113. The NYPD does not permit participating businesses to pay Officers directly.

C.  **Vendor Defendants' Participation in the PDP and Employment of Officers**

114. For all relevant times, the Vendor Defendants obtained and maintained approval to employ Officers as part of the PDP.

115. Once so approved the Vendor Defendants in their own regard coordinated and continue to coordinate with the NYPD to assess how many Officers the business needs to staff a particular PDP detail.

116. The Vendor Defendants direct and control the dates Officers work on PDP details.

117. The Vendor Defendants, post solicitations on the PDP portal for Officers to view and ultimately accept.

118. By way of a "Participation Agreement" entered into between the Vendor Defendants and NYPD, the Vendor Defendants agree to pay Officers at the uniform hourly rates set forth in the PDP.

119. Once an Officer is hired, the Vendor Defendants direct and control the Officers throughout the PDP detail.

120. The Vendor Defendants direct Officers to the exact location where they are to work throughout the PDP detail.

121. The Vendor Defendants determine the meal and break policies for Officers and dictate the circumstances under which an Officer may intervene, such as by detaining a customer suspected of theft.

122. The Vendor Defendants require Officers to report their work in Activity Logs at thirty minute intervals throughout their PDP detail.

123. The Vendor Defendants subject Officers to discipline and report Officers to the NYPD for failing to follow the Vendor Defendants' policies.

124. The Vendor Defendants enforce NYPD standards in the same manner, by reporting Officers for failing to comply with the same.

125. The Vendor Defendants control the staffing of Officers insofar as the Vendor Defendants may decline an Officer who accepts a detail through the PDP portal.

126. The Vendor Defendants possess the power to extend an Officer's PDP detail past its scheduled end time.

127. The Vendor Defendants direct and control when Officers are paid for work performed on PDP details.

**D. <u>Failure to Pay the Minimum Wage and Timely Wages</u>**

128. The Defendants agree to pay Plaintiffs and all other Officers an established hourly rate based on the Officer's respective NYPD rank for all work performed on a PDP.

129. The established hourly rates are communicated by the Defendants to the Plaintiffs on the PDP portal where Plaintiffs and all other Officers accept PDP details.

130. Plaintiffs and all other Officers' pay day is every other Friday, covering the pay period of the previous 14-days including the pay day.

21

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

131.    Defendants routinely fail to pay Plaintiffs and all other Officers for PDP details at all, and when paid the delay is many weeks and months after Officers complete the PDP details.

132.    Defendants routinely fail to pay Plaintiffs and all other Officers for PDP details twice very month as required by New York Labor Law.

133.    Defendants have engaged in a pattern and practice of denying Plaintiffs and all other Officers minimum wages and all earned wages at their regular rates of pay.

**E.  Failure to Provide Notice of Pay Rate and Accurate Wage Statements**

134.    New York's Wage Theft Prevention Act requires that employers, including Defendants, provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

135.    Throughout the statutory period, the Defendants have never provided Plaintiffs or any other Officer with a Notice of Pay Rate.

136.    The NYLL also requires that employers, including Defendants Target and NYT issue or provide employees with accurate wage statements with each payment of wages. Defendants Target and NYT never furnished Plaintiffs or any of the other Officers with accurate wage statements during the statutory period.

**F.  Plaintiff Mohamed Monasar**

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 23 of 62 PageID #: 232

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

### i. **Background**

137.    Plaintiff Monasar was hired as a police officer for the Defendant CITY on July 13, 2016.

138.    Plaintiff Monasar first began participating in the PDP for the Defendant CITY in 2017.

139.    Plaintiff Monasar was promoted to Sergeant by the Defendant CITY in July 2023.

140.    After being promoted to Sergeant, Plaintiff Monasar continued to participate in the PDP.

141.    At all times herein Plaintiff Monasar excelled in his role as a police officer, and sergeant.

142.    Plaintiff Monasar first worked for Defendant Target on June 4, 2023.

143.    At all times during his PDP detail on that date and thereafter, Defendant Target collectively and jointly supervised and controlled the terms of Plaintiff Monasar's employment by, *inter alia*, assigning Plaintiff a radio and directing him as to: (1) the specific instructions and directions for the work he was to perform; (2) the specific policies and regulations Plaintiff was required to follow while working for Defendant Target; (3) the conduct or behavior that was prohibited verses what was expected while working for Defendant Target; (4) the specific areas he was required to monitor and the manner in which he was required to patrol them; (5) suspicious activity he was required to look out for; (6) the manner in which he was required to respond to various incidents; (7) the specific time he was permitted to take a meal break; (8) what he was required to do upon his return from lunch; (9) which other Officers he was required to relieve; (10) which third party vendors were allowed on the premises and under what circumstances; (11) which individuals were permitted into the building and which were prohibited; and (12) the manner in

23

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

which he maintained his appearance, including the requirement that Plaintiff wear his eight-point hat throughout the entirety of the shift.

144.    In total, Plaintiff has worked approximately 65 PDP details for Defendants at Defendant Target.

145.    Plaintiff Monasar first worked for Defendant NYT on NOVEMBER 21, 2023

146.    At all times during his PDP detail on that date and thereafter, Defendant NYT collectively and jointly supervised and controlled the terms of Plaintiff Monasar's employment by, *inter alia*, assigning Plaintiff a radio and directing him as to: (1) the specific instructions and directions for the work he was to perform; (2) the specific policies and regulations Plaintiff was required to follow while working for Defendant NYT; (3) the conduct or behavior that was prohibited verses what was expected while working for Defendant NYT; (4) the specific areas he was required to monitor and the manner in which he was required to patrol them; (5) suspicious activity he was required to look out for; (6) the manner in which he was required to respond to various incidents; (7) the specific time he was permitted to take a meal break; (8) what he was required to do upon his return from lunch; (9) which other Officers he was required to relieve; (10) which third party vendors were allowed on the premises and under what circumstances; (11) which individuals were permitted into the building and which were prohibited; and (12) the manner in which he maintained his appearance, including the requirement that Plaintiff wear his eight-point hat throughout the entirety of the shift.

147.    In total, Plaintiff has worked approximately 32 PDP details for Defendants at Defendant NYT.

   ii. **Wage Violations by NYPD and Target**

Case 1:25-cv-00750-MKB-JAM   Document 12-4   Filed 03/06/25   Page 25 of 62 PageID #: 234

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

148.    Defendants NYPD and Target failed to properly pay Plaintiff for his hours worked on PDP details in several ways.

149.    Defendants NYPD and Target failed to timely pay Plaintiff for the hours worked on PDP details.

150.    Throughout the statutory period, Plaintiff's regularly scheduled pay day is/was every other Friday, covering the previous 14-day time frame, including the Friday payday.

151.    However, Defendants NYPD and Target routinely failed to pay Plaintiff for his PDP tours on his regularly scheduled pay day.

152.    For example, on December 27, 2023, Plaintiff worked from 07:00 x 23:00 at the Target Store located at 139 Flatbush Avenue.

153.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

154.    On December 28, 2023, Plaintiff worked from 07:00 x 15:00 at the Target Store located at 139 Flatbush Avenue.

155.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

156.    On February 21, 2024, Plaintiff worked from 08:00 x 23:00 at the Target Store located at New York City.

157.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

158.    On March 6, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

159.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

160.    On March 7, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

161.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

25

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 26 of 62 PageID #: 235

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

162.    On March 20, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

163.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

164.    On March 21, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

165.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

166.    On June 5, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

167.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

168.    On September 1, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

169.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

170.    On September 2, 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store located at New York City.

171.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

172.    On December 23, 2024, Plaintiff worked from 07:00 x 15:00 at the Target Store located at New York City.

173.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

174.    On January 7, 2024, Plaintiff worked from 07:00 x 15:00 at the Target Store located at New York City.

175.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

176.    The Defendants have yet to pay Plaintiff for any of the aforementioned tours that he worked dating back to December 2023.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

177.    Several other Officers have confirmed to Plaintiff that Defendants also failed to timely pay their wages.

178.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of failure to pay.

179.    As such, the Defendants have failed to compensate Plaintiff, in violation of the minimum wage required to pay workers in New York State under both Federal and State law.

180.    By so acting, the NYPD and Defendant Target have paid Plaintiff below the federal and state minimum wage rates and below his regular rate of pay for all hours worked.

181.    To the extent Plaintiff Monasar and those similarly situated have received any payments for his work for NYPD and Target, it has been several months late, on multiple occasions.

182.    This has continued for more than a year.

183.    In fact, some police officers have stopped working for Target due to their refusal to timely pay the officers for the tours that they worked in accordance with the law.

184.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of significant delays in payment, to the extent they are paid.

185.    Plaintiff Monasar and others similarly situated have work hours for NYPD and Target that caused their weekly total to exceed forty hours.

186.    For example on August 15, 2024, Plaintiff worked 8:00 hours for Defendant Target, a period of time that brought his weekly total in excess of forty hours.

187.    NYPD and Target have failed to pay to Plaintiff Monasar the mandatory overtime premium for the hours worked in excess of forty.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 28 of 62 PageID #: 237

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

188.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of being denied overtime pay when PDP hours cause the Officer to exceed forty in the week.

189.    Defendant Target never provided accurate Wage Statements for any of the PDP details that Plaintiff Monasar completed.

190.    Defendant Target never provided Plaintiff Monasar with a Notice of Pay Rate.

**iii. <u>Wage Violations by NYPD and NYT</u>**

191.    Defendants NYPD and NYT failed to properly pay Plaintiff for his hours worked on PDP details in several ways.

192.    Defendants NYPD and NYT failed to timely pay Plaintiff for the hours worked on PDP details.

193.    Throughout the statutory period, Plaintiff's regularly scheduled pay day is/was every other Friday, covering the previous 14-day time frame, including the Friday payday.

194.    However, Defendants NYPD and NYT failed to pay Plaintiff for his PDP tours on his regularly scheduled pay day.

195.    On December 11, 2024. Plaintiff worked from 07:00 x 15:00 at the NYT building located at 242 West 41st Street, New York, NY 100036.

196.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

197.    Typically the NYT takes between four (4) and six (6) months to pay the officers whom they hire for the PDP.

198.    1Other Officers have confirmed to Plaintiff that Defendants NYPD and NYT also failed to timely pay their wages.

28

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 29 of 62 PageID #: 238

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

199.     Upon information and belief, every Officer that has worked and currently works for NYPD and NYT has been subject to the same pattern and practice of failure to pay.

200.     As such, the Defendants have failed to compensate Plaintiff, in violation of the minimum wage required to pay workers in New York State under both Federal and State law.

201.     By so acting, the NYPD and NYT have paid Plaintiff below the federal and state minimum wage rates and below his regular rate of pay for all hours worked.

202.     Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of significant delays in payment, to the extent they are paid.

203.     Upon information and belief, NYPD and NYT have failed to pay to similarly situated Officers the mandatory overtime premium for the hours worked in excess of forty when such excess hours are caused by a PDP detail.

204.     Defendant NYT never provided accurate Wage Statements for any of the PDP details that Plaintiff Monasar completed.

205.     Defendant NYT never provided Plaintiff Monasar with a Notice of Pay Rate.

G.  **Plaintiff Gabrielle Walls**

    i. **Background**

206.     Plaintiff Walls was hired as a police officer for the Defendant CITY on September 29, 2000.

207.     Plaintiff was promoted to Sergeant by the Defendant CITY in 2007.

208.     Plaintiff first joined the PDP in November 2010.

209.     Plaintiff was promoted to Lieutenant by the Defendant CITY in 2015.

210.     Plaintiff was promoted to Captain by the Defendant CITY in May 2022.

29

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

211.    At all times herein Plaintiff excelled in her roles as a police officer, sergeant, lieutenant and Captain.

212.    In 2022, the Defendant CITY's PDP extended to include NYPD executives (the rank of Captain or above).

213.    Plaintiff joined the PDP as a Captain in 2022.

214.    Shortly thereafter, Plaintiff first worked for Defendant TARGET as a Captain.

215.    At all times during her PDP detail at Defendant City and Defendant Target, collectively and jointly supervised and controlled the terms of Plaintiff's employment by, *inter alia*, assigning Plaintiff a radio and directing him as to: (1) the specific instructions and directions for the work he was to perform; (2) the specific policies and regulations Plaintiff was required to follow while working for Defendant Target; (3) the conduct or behavior that was prohibited verses what was expected while working for Defendant Target; (4) the specific areas he was required to monitor and the manner in which he was required to patrol them; (5) suspicious activity he was required to look out for; (6) the manner in which he was required to respond to various incidents; (7) the specific time he was permitted to take a meal break; (8) what he was required to do upon his return from lunch; (9) which other Officers he was required to relieve; (10) which third party vendors were allowed on the premises and under what circumstances; (11) which individuals were permitted into the building and which were prohibited; and (12) the manner in which he maintained his appearance, including the requirement that Plaintiff wear his eight-point hat throughout the entirety of the shift.

216.    In total, in her time in the PDP Plaintiff has worked approximately 212 PDP details for Defendant Target.

217.    On average Plaintiff works approximately 500 hours a year in the PDP.

30

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

ii. **Wage Violations**

218.    Defendants NYPD and Target failed to properly pay Plaintiff Walls for her hours worked on PDP details in several ways.

219.    Defendants NYPD and Target failed to timely pay Plaintiff for the hours worked on PDP details.

220.    Throughout the statutory period, Plaintiff's regularly scheduled pay day was every other Friday, covering the previous 14 days including the payday.

221.    However, Defendants NYPD and Target routinely failed to pay Plaintiff for her PDP tours on her regularly scheduled pay day.

222.    For example on April 17, 2024, Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

223.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

224.    On May 17, 2024, Plaintiff worked from 15:00 x 19:30 at the Target Store #2212 located in Flatbush.

225.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

226.    On July 4, 2024, Plaintiff worked from 08:00 x 16:00 at the Target Store #1401 located on Gateway Drive.

227.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

228.    On July 28 2024, Plaintiff worked from 15:00 x 23:00 at the Target Store #1401 located on Gateway Drive.

229.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

230.    On July 29 2024, Plaintiff worked from 16:00 x 23:00 at the Target Store #2212 located in Flatbush.

31

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 32 of 62 PageID #: 241

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

231.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

232.    On August 15 2024, Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

233.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

234.    On December 23 2024, Plaintiff worked from 15:00 x 23:59 at the Target Store #2212 located in Flatbush.

235.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

236.    On December 24 2024, Plaintiff worked from 07:00 x 17:00 at the Target Store #2212 located in Flatbush.

237.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

238.    On December 31 2024, Plaintiff worked from 08:00 x 15:00 at the Target Store #2212 located in Flatbush.

239.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

240.    On January 2, 2025 Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

241.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

242.    On January 6, 2025 Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

243.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

244.    On January 7, 2025 Plaintiff worked from 08:00 x 15:00 at the Target Store #2212 located in Flatbush.

245.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

246.    On January 13, 2025 Plaintiff worked from 15:00 x 23:00 at the Target Store #2212 located in Flatbush.

247.    To date the Defendants have not paid Plaintiff for the aforementioned tour.

248.    On January 14, 2025 Plaintiff worked from 08:00 x 15:00 at the Target Store #2212 located in Flatbush.

249.    To date the Defendants have not paid Plaintiff for the aforementioned tours.

250.    The Defendants have yet to pay Plaintiff for any of the aforementioned tours that she worked dating back to April 2024.

251.    Several other Officers have confirmed to Plaintiff that Defendants also failed to timely pay their wages.

252.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of failure to pay.

253.    As such, the Defendants have failed to compensate Plaintiff Walls, in violation of the minimum wage required to pay workers in New York State under both Federal and State law.

254.    By so acting, the NYPD and Defendant Target have paid Plaintiff Walls below the federal and state minimum wage rates and below his regular rate of pay for all hours worked.

255.    To the extent Plaintiff Walls and those similarly situated have received any payments for his work for NYPD and Target, it has been several month's late, on numerous occasions.

256.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of significant delays in payment, to the extent they are paid.

FILED: NEW YORK COUNTY CLERK 01/21/2025 05:46 PM
INDEX NO. 150717/2025
NYSCEF DOC. NO. 18
Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 34 of 62 PageID
#: 243
RECEIVED NYSCEF: 01/21/2025

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

257.    Defendant Target never provided accurate Wage Statements for any of the PDP details that Plaintiff Walls completed.

258.    Defendant Target never provided Plaintiff Walls with a Notice of Pay Rate.

## H. **Plaintiff Brandon Roman**

### i. **Background**

259.    Plaintiff Roman has been for all relevant time periods a police officer for the NYPD.

260.    On August 9, 2023, Plaintiff performed PDP services for Defendant Sam Ash Music Corporation (herein Defendant "Sam Ash").

261.    Plaintiff Roman was not paid for such by Defendants NYPD and Sam Ash for such work until at least six months later.

262.    Upon information and belief, Defendants NYPD and Sam Ash have and continue to delay payments to nearly all PDP participants well beyond the semi-monthly payments required by the New York Labor Law.

263.    On March 9, 2023, March 13, 2023, April 22, 2023, April 23, 2023, and January 3, 2024, Plaintiff Roman performed PDP services for Defendant Sam Ash.

264.    Payment to Plaintiff was routinely delayed many months by Defendants NYPD and Sam Ash well beyond the semi-monthly required by New York Labor Law.

265.    On the following dates Plaintiff Roman performed PDP duties for Defendant Bj's Wholesale Club Inc. (herein Defendant "Bj's"):  August 21, 2022, April 8, 2022, August 21, 2022, April 8, 2023, April 12, 2023, May 21, 2023, September 8, 2023, September 30, 2023, October 6, 2023, October 10, 2023, October 20, 2023, November 3, 2023, November 12, 2023, December 2, 2023, December 17, 2023, January 11, 2024, February 20, 2024, February 27, 2024, February 28,

34

2024, March 29, 2024, May 23, 2024, July 22, 2024, July 24, 2024, August 6, 2024, September 21, 2024, October 15, 2024, November 20, 2024, and January 17, 2025.

266.    Payment to Plaintiff was routinely delayed many months by Defendants NYPD and Bj's well beyond the semi-monthly required by New York Labor Law.

267.    Upon information and belief, other similarly situated officers were either not paid at all or had their pay delayed excessively beyond by-monthly by Defendants NYPD and Bj's.

268.    Plaintiff Roman performed PDP duties for Defendant Marshalls on numerous occasions since 2022, including well over fifty assignments.

269.    Payment to Plaintiff was routinely delayed many months by Defendants NYPD and Marshalls well beyond the semi-monthly required by New York Labor Law.

270.    Upon information and belief, other similarly situated officers were either not paid at all or had their pay delayed excessively beyond by-monthly by Defendants NYPD and Marshalls.

271.    Plaintiff Roman performed PDP duties for Defendant 180 Maiden Lane on the following dates:  August 25, 2022, September 8, 2022, September 12, 2022, March 13, 2023, March 30, 2023, April 7, 2023, May 3, 2023, June 7, 2023, September 26, 2023, March 31, 2024 and April 12, 2024.

272.    Payment to Plaintiff Roman was routinely delayed many months by Defendants NYPD and 180 Maiden Lane well beyond the semi-monthly required by New York Labor Law.

273.    Upon information and belief, other similarly situated officers were either not paid at all or had their pay delayed excessively beyond by-monthly by Defendants NYPD and 180 Maiden Lane.

274.    Plaintiff Roman performed PDP duties for Defendant Shoprite on October 7, 2023.

35

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

275.    Payment to Plaintiff Roman was delayed more than two months by Defendants NYPF and Shoprite.

276.    Upon information and belief, other similarly situated officers were either not paid at all or had their pay delayed excessively beyond by-monthly by Defendants NYPD and Shoprite.

**ii. <u>Wage Violations</u>**

277.    The Defendants NYPD and the Vendor Defendants identified have failed to properly pay Plaintiff Roman for her hours worked on PDP details in several ways.

278.    Defendants NYPD and the Vendor Defendants identified failed to timely pay Plaintiff Roman for the hours worked on PDP details.

279.    Throughout the statutory period, Plaintiff Roman's regularly scheduled pay day was every other Friday, covering the previous 14 days including the payday.

280.    However, Defendants routinely failed to pay Plaintiff Roman for PDP tours on the regularly scheduled pay day and well beyond the bi-monthly required by the New York Labor Law.

281.    Upon information and belief, every Officer that has worked and currently works for NYPD and the identified Vendor Defendants has been subject to the same pattern and practice of failure to pay.

282.    As such, the Defendants have failed to compensate Plaintiff Roman, in violation of both Federal and State law.

283.    Upon information and belief, every Officer that has worked and currently works for NYPD and Target has been subject to the same pattern and practice of significant delays in payment, to the extent they are paid.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

284. The identified Vendor Defendants never provided accurate Wage Statements for any of the PDP details that Plaintiff Roman completed.

285. The identified Vendor Defendants never provided Plaintiff Roman with a Notice of Pay Rate.

## I. **Plaintiff Luis Martinez**

### i. **Background**

286. Plaintiff Martinez has been for all relevant time periods a police officer for the NYPD.

287. Plaintiff Martinez began taking PDP assignments in 2022.

288. On January 1, 2023, January 7, 2023, January 21, 2023, and January 26, 2023, Plaintiff Martinez performed PDP services for Defendant Burlington.

289. Plaintiff Martinez was not paid for the January 2023 PDP assignments until May 4, 2023.

290. On September 10, 2023, Plaintiff Martinez performed PDP services for Defendant Burlington.

291. Plaintiff was not paid for the September 10, 2023 assignment until October 5, 2023.

292. On February 19, 2024, Plaintiff Martinez performed PDP services for Defendant Burlington.

293. Plaintiff was not paid for the February 19, 2024 assignment

294. Upon information and belief, Defendants NYPD and Burlington have and continue to delay payments to nearly all PDP participants well beyond the semi-monthly payments required by the New York Labor Law.

37

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 38 of 62 PageID #: 247

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

295.    On July 13, 2024 Plaintiff performed PDP services at Defendant Bj's.

296.    Plaintiff Martinez was not paid for the July 13, 2024 assignment until August 19, 2024.

297.    On August 10, 2023 Plaintiff Martinez performed PDP services at Defendant Bj's.

298.    Plaintiff Martinez was not paid for the August 10, 2023 assignment until October 5, 2023.

299.    Upon information and belief, other similarly situated officers were either not paid at all or had their pay delayed excessively beyond bi-monthly by Defendants NYPD and Bj's.

**ii.  <u>Wage Violations</u>**

300.    The Defendants NYPD and the Vendor Defendants identified have failed to properly pay Plaintiff Martinez for hours worked on PDP details in several ways.

301.    Defendants NYPD and the Vendor Defendants identified failed to timely pay Plaintiff Martinez for the hours worked on PDP details.

302.    Throughout the statutory period, Plaintiff Martinez's regularly scheduled pay day was every other Friday, covering the previous 14 days including the payday.

303.    However, Defendants routinely failed to pay Plaintiff Martinez for PDP tours on the regularly scheduled pay day and well beyond the bi-monthly required by the New York Labor Law.

304.    Upon information and belief, every Officer that has worked and currently works for NYPD and the identified Vendor Defendants has been subject to the same pattern and practice of failure to pay.

305.    As such, the Defendants have failed to compensate Plaintiff Martinez, in violation of both Federal and State law.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

306.     Upon information and belief, every Officer that has worked and currently works for Defendants NYPD and Bj's and/or Burlington has been subject to the same pattern and practice of significant delays in payment, to the extent they are paid.

307.     The identified Vendor Defendants never provided accurate Wage Statements for any of the PDP details that Plaintiff Martinez completed.

308.     The identified Vendor Defendants never provided Plaintiff Martinez with a Notice of Pay Rate.

## J. **Plaintiff Osama Ali**

### i. **Background**

309.     Plaintiff Ali has been for all relevant time periods a police officer for the NYPD.

310.     Plaintiff Ali began taking PDP assignments in 2020.

311.     On May 16, 2024 and on May 22, 2024, Plaintiff Ali performed PDP services for Defendant Marshalls.

312.     To date, Plaintiff Ali has not been paid for the two May 2024 PDP assignments. While a check had been issued on or about June 17, 2024, that check had insufficient funds and was rejected Plaintiff Ali's bank.

313.     To date, although repeatedly requested by Plaintiff Ali, Defendants have failed and refused to Pay Plaintiff Ali for the PDP assignments in May 2024.

314.     Upon information and belief, Defendants NYPD and Marshalls have and continue to delay payments to nearly all PDP participants well beyond the semi-monthly payments required by the New York Labor Law.

315.     Upon information and belief, Defendants NYPD and Marshalls have failed to pay numerous other PDP officers for their PDP assignments.

39

### ii. <u>Wage Violations</u>

316. The Defendants NYPD and Marshalls have failed to properly pay Plaintiff Ali for hours worked on PDP details in several ways.

317. Defendants NYPD and Marshalls failed to timely pay Plaintiff Ali for the hours worked on PDP details.

318. Throughout the statutory period, Plaintiff Ali's regularly scheduled pay day was every other Friday, covering the previous 14 days including the payday.

319. However, Defendants failed to pay Plaintiff Ali for PDP tours on the regularly scheduled pay day and well beyond the bi-monthly required by the New York Labor Law.

320. Upon information and belief, numerous other Officers that have worked and currently work for Defendants NYPD and Marshalls have been subject to the same pattern and practice of failure to pay.

321. As such, the Defendants have failed to compensate Plaintiff Ali, in violation of both Federal and State law.

322. Defendant Marshalls never provided accurate Wage Statements for any of the PDP details that Plaintiff Ali completed.

323. Defendant Marshalls never provided Plaintiff Ali with a Notice of Pay Rate.

### K. <u>Plaintiff Gilbert Abreu</u>

### i. <u>Background</u>

324. Plaintiff Abreau has been for all relevant time periods a police officer for the NYPD.

325. Plaintiff Abreau began taking PDP assignments in 2019.

Case 1:25-cv-00750-MKB-JAM   Document 12-4   Filed 03/06/25   Page 41 of 62 PageID #: 250

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

326.     Plaintiff Abreau work approximately 800 PDP assignments for Defendant Bj's during the period 2020 to the present.

327.     Defendants NYPD and Bj's remitted payment to Plaintiff Abreau at least four weeks later, and often times six or more weeks later.

328.     Plaintiff Abreau work PDP assignments for Defendant Bnos Bais Yaakov a total of ten times between 2022 and 2024.

329.     Each and every time Plaintiff Abreau worked for Defendant Bnos Bais Yaakov he did not receive payment until at least eight weeks later, oftentimes longer.

330.     Upon information and belief, Defendants NYPD and Bnos Bais Yaakov have and continue to delay payments to nearly all PDP participants well beyond the semi-monthly payments required by the New York Labor Law.

331.     Upon information and belief, Defendants NYPD and Bnos Bais Yaakov have failed to pay numerous other PDP officers for their PDP assignments.

**ii.  Wage Violations**

332.     The Defendants NYPD and Bnos Bais Yaakov have failed to properly pay Plaintiff Abreau for hours worked on PDP details in several ways.

333.     Defendants NYPD and Bnos Bais Yaakov failed to timely pay Plaintiff Abreau for the hours worked on PDP details.

334.     Throughout the statutory period, Plaintiff Abreau's regularly scheduled pay day was every other Friday, covering the previous 14 days including the payday.

335.     However, Defendants failed to pay Plaintiff Abreau for PDP tours on the regularly scheduled pay day and well beyond the bi-monthly required by the New York Labor Law.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

336.    Upon information and belief, numerous other Officers that have worked and currently work for Defendants NYPD and Bnos Bais Yaakov have been subject to the same pattern and practice of failure to pay.

337.    As such, the Defendants have failed to compensate Plaintiff Abreau, in violation of both Federal and State law.

338.    Defendant Bnos Bais Yaakov never provided accurate Wage Statements for any of the PDP details that Plaintiff Abreau completed.

339.    Defendant Bnos Bais Yaakov never provided Plaintiff Ali with a Notice of Pay Rate.

**L.  Plaintiff Jesus Hernandez Torres**

   **i.  Background**

340.    Plaintiff Torres has been for all relevant time periods a police officer for the NYPD.

341.    Plaintiff Torres began taking PDP assignments in 2022.

342.    Plaintiff Torres worked for Defendant Barclays on March 8, 2023 and May 9, 2023.

343.    Defendants NYPD and Barclays remitted payment to Plaintiff Abreau approximately five months later for each of these two assignments.

344.    Upon information and belief Barclays has failed and refused to remit timely payment for PDP assignments for all similarly situated officers.

345.    Upon information and belief other similarly situated officers have not been paid at all by Barclays for work performed under the PDP.

346.    Plaintiff Abreau work PDP assignments for Defendant Bnos Bais Yaakov a total of ten times between 2022 and 2024.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 43 of 62 PageID #: 252

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

347.    Each and every time Plaintiff Abreau worked for Defendant Bnos Bais Yaakov he did not receive payment until at least eight weeks later, oftentimes longer.

348.    Upon information and belief, Defendants NYPD and Bnos Bais Yaakov have and continue to delay payments to nearly all PDP participants well beyond the semi-monthly payments required by the New York Labor Law.

349.    Upon information and belief, Defendants NYPD and Bnos Bais Yaakov have failed to pay numerous other PDP officers for their PDP assignments.

### ii. <u>Wage Violations</u>

350.    The Defendants NYPD and Bnos Bais Yaakov and Barclays have failed to properly pay Plaintiff Abreau for hours worked on PDP details in several ways.

351.    Defendants NYPD and Bnos Bais Yaakov and Barclays failed to timely pay Plaintiff Abreau for the hours worked on PDP details.

352.    Throughout the statutory period, Plaintiff Abreau's regularly scheduled pay day was every other Friday, covering the previous 14 days including the payday.

353.    However, Defendants failed to pay Plaintiff Abreau for PDP tours on the regularly scheduled pay day and well beyond the bi-monthly required by the New York Labor Law.

354.    Upon information and belief, numerous other Officers that have worked and currently work for Defendants NYPD and Bnos Bais Yaakov and Barclays have been subject to the same pattern and practice of failure to pay.

355.    As such, the Defendants have failed to compensate Plaintiff Abreau, in violation of both Federal and State law.

356.    Defendants Bnos Bais Yaakov and Barclays never provided accurate Wage Statements for any of the PDP details that Plaintiff Abreau completed.

43

FILED: NEW YORK COUNTY CLERK 01/21/2025 05:46 PM INDEX NO. 150717/2025

NYSCEF DOC. NO. 28   Case 1:25-cv-00750-MKB-JAM   Document 12-4   Filed 03/06/25   Page 44 of 62 PageID   RECEIVED NYSCEF: 01/21/2025
#: 253

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

357. Defendants Bnos Bais Yaakov and Barclays never provided Plaintiff Ali with a Notice of Pay Rate.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

358. Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated Officers who have been employed by the NYPD and participated in the PDP at any time during the full statute of limitations period (the "FLSA Collective").

359. At all relevant times, Plaintiff and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' practices of: (i) failing to compensate Plaintiff and the FLSA Collective at the federal minimum wage for all hours worked in a workweek; and (ii) failing and refusing to timely pay all wages owed.

360. At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective, and that those duties are not exempt from the provisions of the FLSA.

361. Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective.

362. As a result of their unlawful conduct, Defendants are liable to Plaintiffs and the FLSA Collective for the full amount of their unpaid and late wages, with interest, plus an additional equal amount as liquidated damages, plus reasonable attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

363. While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 6000 members of the FLSA Collective.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

364.     Plaintiff is currently unaware of the identities of the individual members of the FLSA Collective.

365.     Accordingly, the Court should require Defendants to provide Plaintiff with a list of all members of the proposed FLSA Collective, along with their last known home addresses, telephone numbers, and email addresses, so that Plaintiff may provide the members of the FLSA Collective with notice of this action and an opportunity to make an informed decision regarding whether to participate in the same.

## CLASS ACTION ALLEGATIONS

### A. Identity of the Class

366.     Plaintiffs bring the NYLL claims as a class action.

367.     Plaintiffs seeks to maintain claims, pursuant to CPLR 901 and 902, on behalf of themselves and a class of all other Officers who worked for the NYPD and participated in the PDP at any time during the full statute of limitations period (the "Class").

368.     Plaintiffs allege, on behalf of themselves and the Class, that the Defendants violated the NYLL by, *inter alia*: (i) failing to compensate Plaintiffs and the Class for all hours worked; (ii) failing to compensate Plaintiffs and the Class at their established regular rates of pay and in accordance with their agreed terms of employment; (iii) failing to timely pay all wages owed; (iv) failing to provide Plaintiffs and the Class with Notices of Pay Rate; and (v) failing to furnish accurate wage statements to Plaintiffs and the Class.

369.     Plaintiff and the Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

370.     The wage practices described herein are part of the Defendants' normal course of conduct.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

371.    Pursuant to CPLR 902 and 903, Plaintiff's NYLL and FIFA claims may be pursued by all similarly situated persons who do not opt out of the Class.

**B.  Numerosity and Impracticality of Joinder**

372.    The members of the Class are so numerous that joinder is impracticable.

373.    While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 1000 members of the Class that performed work at Defendant Target.

374.    While the exact number is unknown to Plaintiff at this time, upon information and belief, there are approximately 100 members of the Class that performed work at Defendant NYT.

375.    Therefore, the numerosity requirement of CPLR 902 and 903 is satisfied.

**C.  Common Questions of Law and Fact**

376.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and predominate over any questions only affecting the members of the Class individually.

377.    Indeed, there are few, if any, purely individual issues in this action.

378.    The questions of law and fact that are common to Plaintiffs and the Class include, without limitation:

         a.    Whether the Vendor Defendants failed to pay Plaintiffs and the Class all minimum wages owed;

         b.    Whether the Vendor Defendants failed to pay Plaintiffs and the Class all wages owed at their regular rates of pay and in accordance with their agreed terms of employment;

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

      c.        Whether the Vendor Defendants failed to timely pay Plaintiffs and the Class their wages;

      d.        Whether the Vendor Defendants failed to provide Plaintiffs and the Class with Notices of Pay Rate;

      e.        Whether the Vendor Defendants failed to furnish accurate wage statements to Plaintiffs and the Class; and

      f.        Whether Plaintiffs and the Class are entitled to liquidated damages and injunctive relief.

379.    Therefore, the common question requirement of CPLR 902 and 903 is satisfied.

**D.  Typicality of Claims and Relief Sought**

380.    Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent.

381.    Plaintiffs and the Class work, or have worked, for the Vendor Defendants and are, or were, subject to the same compensation policies and practices.

382.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are typical of the Vendor Defendants' treatment of Officers assigned to them through the PDP, generally, and of the Class specifically.

383.    Therefore, the typicality requirement of CPLR 902 and 903 is satisfied.

**E.  Adequacy of Representation**

384.    Plaintiffs will fairly and adequately protect the interests of the Class because Plaintiffs' interests are coextensive and aligned with those of the Class.

385.    Plaintiffs have no interests adverse to the Class they seek to represent.

47

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

386.     Plaintiffs are willing and able to represent the Class as fairly and vigorously as they pursue their similar individual claims.

387.     Plaintiffs have retained competent counsel who are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

388.     The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and Class claims at issue in the instant action satisfy the adequacy of representation requirement of CPLR 902 and 903.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY AGREED UPON WAGES
*(On Behalf of Plaintiffs and the Class against the Vendor Defendants)*

389.     Plaintiffs, on behalf of himself and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

390.     During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., and all applicable regulations thereunder.

391.     The NYLL requires covered employers, including the Vendor Defendants, to compensate Officers at their established regular rates of pay for all hours worked.

392.     Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants pay them at their established regular rates of pay for all hours worked under the NYLL.

393.     During the statute of limitations period, the Vendor Defendants have engaged in a common policy and practice of failing to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked in a workweek.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 49 of 62 PageID #: 258

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

394.    As a result of the Vendor Defendants' failure to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked in a workweek, the Vendor Defendants have violated the NYLL and/or applicable regulations thereunder.

395.    The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

396.    The Vendor Defendants' violation of the NYLL has significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE
*(On Behalf of Plaintiffs and the Class against the Vendor Defendants)*

397.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

398.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, and all applicable regulations thereunder.

399.    The NYLL requires covered employers, including the Vendor Defendants, to compensate Officers at a rate not less than the applicable State minimum wage for all hours worked in a workweek.

400.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants pay them minimum wages under the NYLL.

401.    During the statute of limitations period, the Vendor Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate less than the applicable State minimum wage for all hours worked in a workweek.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

402.    As a result of the Vendor Defendants failure to compensate Plaintiffs and the Class at a rate not less than the applicable State minimum wage for all hours worked in a workweek, the Vendor Defendants have violated the NYLL and/or applicable regulations thereunder.

403.    The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

404.    The Vendor Defendants' violation of the NYLL has significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NYLL: FAILURE TO PAY TIMELY WAGES
***(On Behalf of Plaintiffs and the Class against the Vendor Defendants)***

405.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

406.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., and all applicable regulations thereunder.

407.    The NYLL requires covered employers, including the Vendor Defendants, to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

408.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants timely pay them their wages.

409.    Throughout the statute of limitations period, the Vendor Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 51 of 62 PageID #: 260

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

410.    As a result of the Vendor Defendants' failure to pay Plaintiffs and the Class all compensation earned in a particular workweek on the regularly scheduled pay day for the period in which such workweek ends, the Vendor Defendants have violated the NYLL and/or applicable regulations thereunder.

411.    The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

412.    The Vendor Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE NYLL:
### FAILURE TO PROVIDE NOTICES OF PAY RATE
**(On Behalf of Plaintiff and the Class against the Vendor Defendants)**

413.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

414.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., and all applicable regulations thereunder.

415.    The NYLL requires covered employers, including the Defendants City and Targett provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the

51

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 52 of 62 PageID #: 261

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

telephone number of the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

416.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants provide them with Notices of Pay Rate.

417.    During the statute of limitations period, the Vendor Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the Class.

418.    As a result of the Vendor Defendants failure to provide Notices of Pay Rate to Plaintiffs and the Class, the Vendor Defendants have violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

419.    The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiffs and the Class in accordance with the NYLL.

420.    The Vendor Defendants violations of the NYLL entitle Plaintiffs and each member of the Class to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS**
*(On Behalf of Plaintiff and the Class against the Vendor Defendants)*

421.    Plaintiffs, on behalf of himself and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

422.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., and all applicable regulations thereunder.

52

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

423.    The NYLL requires covered employers, including the Vendor Defendants to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

424.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants furnish them proper wage statements.

425.    During the statute of limitations period, the Vendor Defendants have engaged in a policy and practice of unlawfully failing to provide accurate wage statements to Plaintiffs and the Class.

426.    As a result of the Vendor Defendants' failure to furnish accurate wage statements to Plaintiffs and the Class, the Vendor Defendants have violated the NYLL and/or applicable regulations thereunder, including, *inter alia*, NYLL § 195.

427.    The Vendor Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiffs and the Class in accordance with the NYLL.

428.    The Vendor Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE FIFA: LATE PAYMENT OF COMPENSATION**
*(On Behalf of Plaintiff and the Class against all Defendants)*
*(Brought in the Alternative to Plaintiff and the Class's Claims under the FLSA and NYLL)*

53

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

429.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

430.    In the alternative to their claims brought under the FLSA and NYLL, Plaintiffs and the Class allege violations of the FIFA, N.Y.C. Admin. Code §§ 20-927, *et seq.*, and all applicable regulations thereunder.

431.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the FIFA and all applicable regulations thereunder.

432.    The FIFA requires hiring parties, including the Defendants, to pay freelance workers all contracted compensation on or before the date such contracted compensation is due under the terms of a contract or, if the contract does not specify when the contracted compensation is due or the mechanism by which such due date shall be determined, no later than 30 days after completion of the freelance worker's services under the contract.

433.    Plaintiffs and the Class were not exempt from the requirement that the Defendants timely pay them their contracted compensation under the FIFA.

434.    During the statute of limitations period, the Defendants have engaged in a policy and practice of hiring Plaintiffs and the Class to complete services without specifying when contracted compensation is due or the mechanism by which such due date shall be determined.

435.    As a result, Plaintiffs and the Class are owed all contracted compensation within 30 days of the completion of services by Plaintiffs and the Class.

436.    Throughout the full statute of limitations periods, the Defendants have engaged in a policy and practice of failing to pay Plaintiffs and the Class all contracted compensation within 30 days of the completion of services performed by Plaintiffs and the Class under their contracts.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

437.    As a result of the Defendants failure to pay Plaintiffs and the Class all contracted compensation within 30 days of completion of services, the Defendants have violated the FIFA and/or applicable regulations thereunder.

438.    The Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the FIFA.

439.    The Defendants' violations of the FIFA have significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid compensation, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: FAILURE TO PAY MINIMUM WAGE
### (On Behalf of Plaintiffs and the Class against all Defendants)

440.    Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

441.    During the full statutory period, Plaintiffs and the Class were protected by the provisions of the FLSA, 29 U.S.C. Chapter 8, and all applicable regulations thereunder.

442.    The FLSA requires covered employers, including the Defendants, to compensate Officers at a rate not less than the applicable federal minimum wage for all hours worked in a workweek.

443.    The FLSA requires covered employers, including the Defendants, compensate Officers at the rate of time and one half for all hours in excess of forty in a week.

444.    Plaintiffs and the Class were not exempt from the requirement that the Vendor Defendants pay them minimum wages and overtime premium under the FLSA.

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

445.     During the statute of limitations period, the Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate equal to or above the applicable federal minimum wage for all hours worked in a workweek.

446.     During the statute of limitations period, the Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate of time and one-half for all hours worked in excess of forty in a given week.

447.     As a result of the Defendants failure to compensate Plaintiffs and the Class at a rate not less than the applicable federal minimum wage for all hours worked in a workweek, and failure to pay the overtime premium, the Defendants have violated the FLSA and/or applicable regulations thereunder.

448.     The Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to comply with these requirements of the FLSA.

449.     The Defendants' violation of the FLSA has significantly damaged Plaintiffs and the Class and entitle them to recover the total amount of their unpaid wages and overtime premium, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Class, respectfully requests that this Court:

A.     Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.     Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

FILED: NEW YORK COUNTY CLERK 01/21/2025 05:46 PM
INDEX NO. 150717/2025

NYSCEF DOC. NO. 18
Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 57 of 62 PageID
#: 266
RECEIVED NYSCEF: 01/21/2025

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

C.      Declare this action to be maintainable as a class action pursuant to CPLR 901 and 902 and a collective action under FLSA;

D.      Instruct Defendants to provide the necessary information so Plaintiffs can give all putative members of the class and collective notice of this action and an opportunity to make an informed decision about whether to participate;

E.      Designate Plaintiffs as the representative of the Class, and his counsel of record as class counsel;

F.      Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.      Determine the damages sustained by Plaintiffs and the Class as a result of the Vendor Defendants' violations of the NYLL and FIFA, and award those damages against the Vendor Defendants and in favor of Plaintiffs and the Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Award Plaintiff, the FLSA Collective, and/or the Class an additional equal amount as liquidated damages because Defendants' violations were willful and without a good faith basis;

I.      Award Plaintiff, the FLSA Collective, and/or the Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

J.      Grant Plaintiff, the FLSA Collective, and/or the Class such other and further relief that the Court deems just and proper.

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 58 of 62 PageID #: 267

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself, the NYLL Collective and the Class, hereby demand a trial

by jury on all issues of fact and damages.

Dated: New York, New York
           January 21, 2025

Respectfully submitted,

Law Office of John A. Scola, PLLC
Attorneys for Plaintiffs and the Putative Class and Collective
By:_____/s/ John Scola
                  John Scola, Esq.

90 Broad Street Suite 1023
New York, New York 10004
(917) 423-1445
jscola@johnscolalaw.com

GODDARD LAW PLLC
*Attorneys for Plaintiffs* and the Putative Class and Collective
       By:  /s/ Megan S. Goddard
Megan S. Goddard, Esq.

39 Broadway, Suite 1540
New York, New York 10006
(646) 964-1178
Megan@goddardlawnyc.com

Charny & Wheeler P.C.
Attorneys for Plaintiffs and the Putative Class and Collective
        By: /s/ Nathaniel K. Charny
Nathaniel K. Charny, Esq.

42 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com

58

Case 1:25-cv-00750-MKB-JAM    Document 12-4    Filed 03/06/25    Page 59 of 62 PageID #: 268

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

INDIVIDUAL VERIFICATION


STATE OF NEW YORK
COUNTY OF NEW YORK

Mohamed Monasar, being duly sworn, deposes and says; that he is the claimant herein; that he has read the foregoing summons and complaint against The City of New York, and Scott Henderson and knows the contents thereof; that the same is true to his own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters that he believes them to be true.

Dated: New York, NY
         January 21, 2024


_____/s/ Mohamed Monasar _____
                Mohamed Monasar

Case 1:25-cv-00750-MKB-JAM     Document 12-4     Filed 03/06/25     Page 61 of 62 PageID #: 270

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

INDIVIDUAL VERIFICATION

STATE OF NEW YORK
COUNTY OF NEW YORK

      Gabrielle Walls, being duly sworn, deposes and says; that he is the claimant herein; that he has read the foregoing summons and complaint against The City of New York, and Scott Henderson and knows the contents thereof; that the same is true to his own knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters that he believes them to be true.

Dated: New York, NY
      January 21, 2024

                            /s/ Gabrielle Walls
                             Gabrielle Walls

61

Case 1:25-cv-00750-MKB-JAM   Document 12-4   Filed 03/06/25   Page 62 of 62 PageID #: 271

EXHIBIT D to Declaration of Eric Arbizo in Support of Defendant's Motion

# VERIFICATION

STATE OF NEW YORK        )
COUNTY OF NEW YORK   )

I, the undersigned, an attorney duly admitted to practice law in the State of New York, under penalties of perjury do affirm.

That I am the attorney of record for the plaintiff in the within matter and make this affirmation in accordance with CPLR 3020. I have read the within VERIFIED FIRST AMENDED COMPLAINT and know the contents thereof to be true to your affirmant's own knowledge, with the exception of those matters therein stated to be alleged upon information and belief. Your affirmant bases her belief regarding those matters upon the contents of the file and conversation with witnesses and the claimant.

This verification is made by your affirmant and not by the claimant for the following reason: The claimants resides in a different County than where your affirmant maintains an office.

Dated: New York, New York
        January 21, 2025

_____/s/_____
JOHN SCOLA